THE SCHENECTADY SAVINGS BANK, Appellant, *v.* MILTON A. WERTHEIM and Others, Defendants, Impleaded with ELSIE S. WELLMAN, Respondent.*

Third Department, December 30, 1932.

*Edwin E. Miller* [*Harold R. Beyerl* of counsel], for the appellant.

*Wemple, Peters & Wemple* [*W. W. Wemple, Jr.,* of counsel], for the respondent.

HILL, J. The appellant savings bank, the plaintiff in this action brought to foreclose a mortgage which purports to be a lien upon a city lot occupied by a two-apartment dwelling house, has appealed from a judgment determining that its mortgage is subordinate to a life use by respondent Elsie S. Wellman of the upper flat of the dwelling. The claim to the life use is founded upon an occupancy by respondent at the time the mortgage was given, which it is claimed was open, visible and inconsistent with the title of the record owners.

The mortgage is dated one day later than the deed to the mortgagors, who were the stepchildren of respondent. The application

to the plaintiff for the loan was made about twenty days earlier by letter which stated that the mortgagors had made a contract to purchase the premises. A truckman testified that he delivered the furniture of the respondent to the premises on a definite date. This was the day before the deed was dated. The respondent herself was unable to tell the exact day when the furniture was delivered, her evidence being: " Q. You moved over there on the 23rd day of April, 1923, to Union Street? A. I don't remember the date. Q. Well, it was the day that Mr. Rudd moved you over there, was it not? A. Why, yes, he moved me over there." Her testimony as to the nature of her occupancy is: " Q. You say you moved into this property, when, April, 1923? Mr. Rudd testified he moved your furniture on the 23rd day of April, 1923. How soon after that did you move in? A. I was there every day. Q. No, I mean how many days after did you come over there to sleep and stay there? A. Well, the house was being decorated and I was there every day, and of course, I didn't get there until two or three weeks later, a couple of weeks later, you know. Q. So you probably were not finally settled in that house until after the first of May, were you? A. Why, I was there all the time. Q. Off and on? A. Yes, off and on, I was there every day, looking after the decorators and my furniture. Q. So that you didn't get finally settled in this place, 864 Union Street, until some time after the first of May? A. I don't know, I don't remember. I was there every day, but I don't know, I don't remember. Q. Did you sleep there or did you sleep over at 929 Albany Street? A. No. I stayed with my sister nights. Q. Where did you stay with your sister — where did she live? A. She lived on Albany Street. Q. Can you tell us when you first started to sleep in this place on Union Street, to use it as your own residence? A. No, I couldn't tell you just that. I was there more or less every day, over there to the house, looking after the decorators and had my lunch there noontimes. Q. Would you say it was the first of May? A. Well, I don't remember, that is all. Q. Was it before the 10th of May? A. I don't remember. * * * Q. Well, do you remember whether or not you went in at the time Mr. Rudd moved your furniture? A. I was there the next day. Q. Do you mean that you continued there after that from the next day right along? A. I was there every day, but I went to my sister's at night to sleep. I was there and had my lunch there, and looked after the decorators and my furniture and things. I was there to take care of them."

The mortgagors applied for the loan on April second. Respondent's furniture was moved to the apartment April twenty-third; the deed was dated April twenty-fourth, which was the first day

that respondent went to the premises; the mortgage was dated April twenty-fifth. These two instruments were recorded on May eighth. The record owners, the stepchildren of respondent, by an instrument dated May tenth conveyed to respondent a life use of the upper flat of the premises and of one-half of the cellar and one-half of the attic, the right of occupancy to commence on May fifteenth. This instrument was not recorded until nearly a year later. The equities as between the stepchildren, both now deceased, and the respondent are with her, but no notice to the plaintiff of her right of occupancy is shown, beyond the use of the premises as stated.

The respondent is the widow of Walter Wellman. At his death there were living Walter F. Wellman and Elizabeth F. Williams, his son and daughter by a former marriage, the mortgagors in this action. Under his will, among other legacies and devises, respondent received the right of occupancy of an apartment in a house, which some time prior to the events earlier stated in this opinion was sold by the children, she joining in the deed and quitclaiming her life use in the apartment. A written agreement was made at the time of the transfer, requiring the children to provide another apartment for respondent, if one was found that pleased all of the parties, respondent having the option of receiving thirty-five dollars monthly in lieu of the use of an apartment. None of these earlier transactions were known by the plaintiff.

Evidence as to personal transactions between respondent and the deceased children, through whom this plaintiff derived its title, was received. It was inadmissible under section 347 of the Civil Practice Act. (*Pope* v. *Allen*, 90 N. Y. 298.)

Respondent to succeed "was bound to show actual notice * * * of the facts upon which her claim was founded, or such facts and circumstances as would put a prudent man upon his guard, and from which actual notice may be inferred and found. The possession which will be equivalent to actual notice to a subsequent purchaser must be an actual, open and visible occupation, inconsistent with the title of the apparent owner by the record; not equivocal, occasional or for a special or temporary purpose; neither can it be consistent with the title of the apparent owner by the record." (*Holland* v. *Brown*, 140 N. Y. 344, 347, 348.) The occupancy shown by respondent was as consistent with a contemplated tenancy by the month or year as with a right of occupancy inconsistent with the title of the record owners. Her furniture had been stored in the house one day, and she was present during the hours the decorators worked on that day and had her lunch there. It has been said: " All the cases agree that notice will not be imputed

to a purchaser except where it is a reasonable and just inference from the visible facts. Neither will the principles of constructive notice apply to unimproved lands, nor to cases where the possession is ambiguous or liable to be misunderstood. (*Patten* v. *Moore*, 32 N. H. 382.) It should not apply within the same principle to an uninhabited and unfinished dwelling house; there must be a possession actual and distinct, and manifested by such acts of ownership as would naturally be observed and known by others." (*Brown* v. *Volkening*, 64 N. Y. 76, 83, 84.) At the time plaintiff accepted the mortgage, the record owners had just acquired title. Repairs were being made; the house was uninhabited at night, and the inference which would be drawn from the presence of the respondent would be nothing more than that she expected to occupy one of the apartments after the completion of the repair and redecoration. She had been in the house only one day during the daylight hours, when the mortgage was accepted. Nothing had been called to plaintiff's attention to put it upon inquiry as to the reason for the presence of the respondent in the house under the conditions disclosed by the evidence, and it is not chargeable with knowledge of the arrangements and contract which had been made by the children of Walter Wellman and the respondent, his widow. This was necessary if plaintiff is to be bound by the terms of the contract between these parties. (*Williamson* v. *Brown*, 15 N. Y. 354.) Walter F. Wellman and Elizabeth F. Williams having just taken title to the premises, the occupancy by the respondent was presumed to be in subordination to their title. (*Pope* v. *Allen*, *supra*.)

The judgment should be reversed on the law and facts, with costs, and judgment directed in favor of the plaintiff, adjudging its mortgage to be superior to the lease of the defendant and a lien upon the entire premises described in the mortgage.

Van Kirk, P. J., Hinman, Rhodes and Crapser, JJ., concur.

The court reverses findings of fact numbered " sixth " and " eleventh " and makes a new finding of fact, that the occupancy of Elsie S. Wellman in the premises subject to the lien of said mortgage was not at the time of the giving thereof an actual, open and visible occupancy inconsistent with the title of the mortgagors Walter F. Wellman and Elizabeth F. Williams, the owners of the record title.

Judgment reversed on the law and facts, with costs, and judgment directed in favor of the plaintiff, adjudging its mortgage to be superior to the lease of the defendant and a lien upon the entire premises described in the mortgage.