**EPSTEIN v. GOLDSTEIN et al.
No. 35.**

Circuit Court of Appeals, Second Circuit.

Nov. 27, 1939.

David Haar, of New York City, for plaintiff.

David W. Kahn, of New York City (Nathan Siegel, Jr., of New York City, of counsel), for bankrupt.

Robert P. Levis, of New York City, for bankrupt's wife.

Before SWAN, CHASE, and PATTERSON, Circuit Judges.

SWAN, Circuit Judge.

In July 1936 Edgar B. Goldstein was adjudicated bankrupt upon his voluntary petition. Thereafter his trustee instituted two suits in equity to set aside as fraudulent conveyances four transfers of property to the bankrupt's wife. One of the transactions under attack involved the assignment of mortgages, another the conveyance of real estate, a third the transfer of a stock brokerage account; and these three transactions occurred early in 1931. The fourth transaction involved the purchase of an automobile in the wife's name in the summer of 1934. After a trial lasting several days, the district judge handed down a lengthy opinion and made voluminous findings of fact and law sustaining all the transfers except that of the stock brokerage account; as to that the plaintiff was successful. Both parties have appealed.

The record is lengthy and consists in large part of testimony by the bankrupt and his wife which is confused and full of contradictions. The trial judge commented in his opinion upon the character of their testimony but nevertheless accepted it in certain respects and made findings of fact in accordance therewith. Upon principles too elementary to require the citation of authorities, the trial judge, who heard and saw the witnesses, must be sustained on such issues unless error in his findings is very clearly demonstrated.

In January 1931 when Goldstein assigned the mortgages to his wife and conveyed to her the land and house that was their home, he was indebted to her in the sum of $25,000. There can be no doubt as to the reality of this debt; it originated in 1924 when Mrs. Goldstein supplied her husband with money to pay off his note for a like sum held by the Oberfelder estate. He was also contingently indebted as a surety on a $20,000 second mortgage to Northeastern Real Estate Securities Corporation. The mortgagor, as Goldstein knew, was about to default on the payment of a small amortization instalment which fell due in February 1931, and in that event Goldstein's contingent liability to Northeastern might become absolute, as it did several months later. These two debts remained unpaid at the date of Goldstein's bankruptcy in 1936 and were the only debts listed in his bankruptcy schedules. It is the theory of the plaintiff's case that the transfers to Mrs. Goldstein in 1931 were made with the intent to hinder and defraud Northeastern in the collection of its contingent claim against Goldstein. The district judge did not so find. He did make findings to the effect that the assignment of the mortgages and the conveyance of the home and adjoining lots were given to the wife as security for the $25,000 indebtedness owing to her. There is sufficient evidence to sustain these findings. It is true that the bankrupt's schedules listed the debt to Mrs. Goldstein as unsecured, and that her testimony, as well as her husband's, abounds in contradictions and confusion; but their statement that the transfers under discussion were for security was accepted by the trial judge, and this court would not be justified in making a contrary finding on such a record as is here presented. There are also findings that the transfers were made for a fair consideration, the antecedent debt, and that the value of the property transferred, $38,415, was not disproportionately large as compared with the amount of the debt. These findings also are supportable. While it does not appear precisely how the district judge arrived at the stated valuation, it is clear that the assigned mortgages were worth much less than their face value of about $26,000. Most of them were second mortgages, some were already in default and subject to prior liens for unpaid taxes, and many of them were subsequently lost by foreclosure of the prior mortgages. The real estate conveyed was also subject to a mortgage, which was later foreclosed. With the conclusion that the value of the security was not disproportionate to the debt we are satisfied.

It is urged by the plaintiff that the judgment cannot stand because there is no finding that Mrs. Goldstein received the security "in good faith" as required by sections 272 and 273 of the New York Debtor and Creditor Law, Consol.Laws, c. 12. But we think this may be spelled out from other findings. Her lack of business experience and her mental and physical illness in January 1931 made her incapable of understanding the transaction involved in the transfers. She did not know that they rendered her husband insolvent, nor that he was contingently indebted to Northeastern. Nor can any implication of bad faith be drawn from the fact that she allowed him to manage and control the properties after their transfer to her as completely as he had done before. With respect to other property of hers she likewise trusted him to conduct all business transactions, as is quite usual between husbands and wives. Even if Goldstein made the transfers with intent to defraud Northeastern, Mrs. Goldstein cannot be deprived of her security unless she received it in bad faith. Cf. Prewit v. Wilson, 103 U.S. 22, 26 L.Ed. 360; English v. Brown, 3 Cir., 229 F. 34. There is no finding that Mrs. Goldstein lacked "good faith," and we cannot see that the evidence compels such a finding. The contention that the transfer of the mortgages as security was void under the doctrine of Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991, appears to us without merit. There was no concealment of Mrs. Goldstein's title, for the assignment was promptly recorded. As to the mortgages and the real estate we think the judgment was correct.

As to the automobile purchase we are constrained to differ with the district judge. In July 1934 Goldstein owned a Hudson car whose value was $75. This he turned in as part payment for a second hand Studebaker which he purchased for $650 and caused to be registered in his wife's name. The balance of the price, $575, was paid by Goldstein's check. The court found that this sum was money of Mrs. Goldstein turned over by her to her husband for the purpose of buying the car in question. The court's opinion seems inconsistent with this finding, for there it is stated that there was evidence that the $575 "were derived from the properties transferred to Mrs. Goldstein in January

1931, which transfers have been held valid." We can find no evidence to substantiate such statement. Goldstein testified that all moneys he had derived from the transferred properties were used to pay mortgage interest and other carrying charges. Mrs. Goldstein testified that the Studebaker was bought with money she had loaned her husband. It appears, however, that the funds in his bank account against which the $575 check was drawn came from a deposit of $1,000 obtained from his stock brokerage account with Halle & Stieglitz. Paragraph XXXVI of the complaint alleges that Goldstein was insolvent when he gave the Studebaker car to his wife and the answer of the defendants contained no denial of this allegation. Consequently, this gift should be set aside. To this extent the plaintiff's appeal is successful.

■ The defendants' appeal relates to the transfer into the name of Mrs. Goldstein on March 26, 1931 of a stock brokerage account which her husband had previously had with Halle & Stieglitz. It contained stocks having a then market value of $41,000, the largest portion of which was represented by 485 shares of Sears Roebuck stock. Most of these shares Mrs. Goldstein had acquired from her mother's estate in 1924 and the balance was accretions by way of stock dividends. The stock certificates had remained continuously in Mrs. Goldstein's name. She had allowed her husband to use the Sears Roebuck stock as collateral for his brokerage accounts but she had made no gift of the shares to him and had always received the dividends thereon herself. The other stocks held in the account at the time of the transfer were 200 shares of Gold Dust and 200 shares of Hazeltine Corporation which Goldstein had purchased on margin, and there was a debit balance owing to the broker of $10,215.16. This sum was paid before the account was transferred to Mrs. Goldstein's name. Immediately thereafter she executed a power of attorney in favor of her husband by virtue of which he controlled the account. In March 1936 he caused it to be transferred from Halle & Stieglitz to another broker. At that time the account contained the same shares as on March 26, 1931 with the exception of the 200 Hazeltine and also with the exception that 5 shares of Sears Roebuck, being a dividend, had been added to the 485 shares. During the period of his control by power of attorney Goldstein had with-

drawn from the account and deposited in his own bank account $14,000 more than he had put into the brokerage account out of his own funds. The district judge found as a conclusion of law that the stock standing in the account in Mrs. Goldstein's name at the date of her husband's bankruptcy is subject to the claim of his trustee. So far as the Sears Roebuck stock is concerned we are clearly of the opinion that this is wrong. As already stated that stock belonged to the wife and was lent by her to her husband to be used as collateral in his account with Halle & Stieglitz. When that account was transferred to her name in 1931 the legal effect in respect to the Sears Roebuck stock was to return to her possession her own property; and if the account that he thereafter conducted in her name under her power of attorney be deemed to be his account, the Sears Roebuck stock was merely lent to him again to use as collateral. It did not cease to be her property, though it was pledged for his debt to the broker; nor was it dedicated to the payment of any other debt. We are not aware of any legal principle which would subject it to the husband's indebtedness to Northeastern, the only creditor other than his wife. The stock was not held out to Northeastern as the property of the bankrupt, for that creditor never knew of the brokerage accounts, nor of the shares held by the brokers as security. Accordingly the judgment must be reversed on the defendant's appeal in so far as it affects the Sears Roebuck stock.

■ We cannot conclude this opinion without uttering a serious protest and criticism concerning the form of the findings of fact and conclusions of law as they appear in this record. After the opinion was handed down, the plaintiff and each defendant filed proposed findings and the judge marked "found" or "not found" against each proposed item of each of the documents. As a result there are three sets of findings of fact and conclusions of law, differing in phraseology, filled with repetitions and covering nearly 60 printed pages. Such a practice places an intolerable burden upon an appellate court. Instead of simplifying the task of ascertaining the facts and rules of law which the trial judge found and applied, it merely confuses them; it defeats the very purpose of Equity Rule 70½, 28 U.S.C.A. following section 723. It is the duty of the trial judge to make his findings without unnecessary repetition and to condense the

various proposed findings into a single document; and it is the duty of the attorney who prepares the record to see that this is done.

The cause is remanded with directions to modify the judgment in conformity with this opinion. No costs are awarded to either party.