**FEDERAL DEPOSIT INSURANCE CO.,
Plaintiff-Appellee, Cross-Appellant,**

v.

**Leonard MALIN, and Phyllis Malin,
Defendants-Appellants,
Cross-Appellees.**

**Nos. 659, 739, Dockets 85–7747, 85–7803.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 27, 1986.

Decided Sept. 23, 1986.

---

Jacob Oliner, New York City (Oliner & Oliner, New York City, of counsel), for defendants-appellants, cross-appellees.

Robert Frey, New York City (Deutsch & Frey, New York City, of counsel), for plaintiff-appellee, cross-appellant.

Before MESKILL, NEWMAN and KEARSE, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from an amended judgment entered September 30, 1985, in the United States District Court for the Eastern District of New York, Altimari, *J.*, after a bench trial. The court declared a deed executed between Phyllis and Leonard Malin pursuant to their separation agreement void and in fraud of the creditor, the Federal Deposit Insurance Company (FDIC), under the actual and presumptive fraud provisions of sections 276, 273 and 273-a of the New York Debtor and Creditor Law. N.Y. Debt. & Cred.Law §§ 276, 273, 273-a (McKinney 1945 & Supp.1986). The court issued an order directing a partition sale of the real property. The Malins appeal from the amended judgment and the FDIC cross-appeals from that part of the judgment denying sanctions. We vacate the judgment and remand to the district court.

## BACKGROUND

This case involves the commercial relationship between Leonard Malin and the FDIC and the personal relationship between Leonard Malin and his former wife, Phyllis Malin. At issue is certain real property, a home in North Woodmere, New York, which was deeded to Phyllis Malin as sole grantee in the course of divorce proceedings. Mindful of competing social considerations, the protection of creditors on the one hand and the encouragement of "orderly and amicable settlement of financial affairs between husband and wife" on the other hand, *Marine Midland Bank-New York v. Batson*, 70 Misc.2d 8, 332 N.Y.S.2d 714, 718 (Sup.Ct.1972), and upon review of the record, we conclude that the setting aside of the conveyance by the district court should be reversed on the ground that New York Debtor and Creditor Law § 278 bars a suit to set aside a fraudulent conveyance against "a purchaser for fair consideration without knowledge of the fraud at the time of the purchase."

In 1977 Leonard Malin left his wife to live with another woman whom he eventually married. In 1980, while still separated, the Malins sold the condominium residence they owned jointly. On September 2, 1980, they purchased a single family house in North Woodmere, New York. Phyllis Malin testified at trial that she and Leonard took title to the house as tenants by the entirety because she had insufficient credit to obtain a mortgage and that when they purchased the house, "[w]e knew that eventually at the time of the divorce, the house would be mine." App. at 123. Although the real property was characterized in the separation agreement as "the marital home," Leonard never lived in the house and Phyllis paid the mortgage installments and other carrying charges.

There was further testimony at trial that subsequent to Leonard's departure and prior to the divorce, he and Phyllis discussed a divorce settlement but did not reach any agreement until about September 1981. Phyllis Malin testified that the original separation agreement was not signed in September 1981 because her mother was ill. The agreement was signed a year later on September 15, 1982, after her mother died.

Under the separation agreement, Leonard Malin agreed to provide support and maintenance of $2,500 per month after taxes, college education expenses for the three children (only one of whom was a minor), a car for Phyllis, plus other benefits. Most pertinent to this case is the statement in the agreement that "[i]t is the intent of the parties that upon the signing of this agreement, [the] Wife shall have sole and exclusive beneficial and actual ownership of the marital home," with the wife to assume all obligations relating to the home. App. at 209.

Meanwhile, on December 15, 1981, the First National Bank of South Charleston (Bank) obtained a default judgment in the United States District Court for the Southern District of West Virginia in the amount of $101,844.98, against Leonard Malin and others. *FDIC v. Spartan Mining Co.*, 96 F.R.D. 677, 679 (S.D.W.Va.1983), *aff'd sub nom. FDIC v. Schaffer*, 731 F.2d 1134 (4th Cir.1984). That judgment was filed and docketed in the United States District Court for the Eastern District of New York on September 29, 1982, and then docketed in the Office of the Clerk of Nassau County on October 27, 1982. Woodmere, New York is located in Nassau County.

That same month, Leonard Malin moved the West Virginia district court to vacate the judgment against him. *Id.* at 679. That court denied his motion after a hearing, finding that he had actual knowledge of the lawsuit in June 1981. *Id.* at 679, 682–83.

On September 15, 1982, the day the separation agreement was signed, Phyllis Malin filed a divorce action against Leonard Malin in Nassau County Supreme Court claiming abandonment for more than one year. A judgment of divorce was granted on November 12, 1982. The state court ordered that the separation agreement survive and not be merged in the judgment.

Thereafter, on or about December 9, 1982, Leonard Malin and Phyllis Malin

transferred title to the real property by deed to Phyllis Malin in accordance with the separation agreement and judgment of divorce. The deed was recorded on January 4, 1983. No tax stamps were affixed to the deed and handwritten on the margin of the deed was the notation "No Consideration." The boiler-plate language, however, recited "consideration of ten dollars and other valuable consideration." App. at 188.

Seventeen months later, in June 1984, the FDIC, as assignee of the Bank's judgment, filed a complaint in the Supreme Court of the State of New York, County of Nassau, to set aside as fraudulent the conveyance of the North Woodmere residence to Phyllis Malin. The Malins removed the action to the United States District Court for the Eastern District of New York. *See* 28 U.S.C. §§ 1441(b), 1446(d) (1982). During the pendency of the action in the district court, the FDIC commenced state execution procedures against the property, directing the sheriff of Nassau County to sell at public auction Leonard Malin's interest in the property. The Malins sought a protective order of the district court enjoining the execution sale. Their application was denied and the execution sale took place on January 28, 1985. The FDIC was the high bidder at $24,000 for Leonard Malin's interest in the property.

A. *Proceedings Below*

In the FDIC action to set aside the conveyance to Phyllis Malin, the district court concluded that the conveyance violated the presumptive fraud provisions of sections 273 and 273-a of New York's Debtor and Creditor Law and the actual fraud provision, section 276 N.Y. Debt. & Cred. Law §§ 273, 273-a, 276 (McKinney 1945 & Supp. 1986). In granting judgment to the FDIC, the court also voided the sheriff's deed. Both parties moved to amend the judgment. On September 30, 1985, the district court amended its judgment by deleting the part that vacated the sheriff's deed to the FDIC. The court declared that Leonard and Phyllis Malin were divisible one-half

owners of the property when the West Virginia judgment was filed in Nassau County, and that the FDIC and Phyllis Malin were now the divisible one-half owners by virtue of the filed judgment, the writ of execution of October 1984 and the sheriff's deed of February 1985 between the sheriff of Nassau County and the FDIC.

In reaching its conclusions that the aforementioned New York state law fraud provisions had been violated, the court reasoned that the property was transferred "well after" Malin knew the debt remained unpaid because the default judgment was filed in Nassau County on October 27, 1982, and the deed between Phyllis and Leonard Malin was dated December 9, 1982. App. at 303. The court noted that the filing of the default judgment established not only "knowledge" of indebtedness but also public notice of the debt. Without further elucidation, the court found that Leonard Malin had transferred his interest in the property with knowledge of his indebtedness and "did so in order to delay and hinder and defraud the plaintiff FDIC in collecting [the docketed] judgment." App. at 304. Thus, the court concluded that the transfer constituted actual fraud, a violation of section 276, as well as presumptive fraud.

The court declared the deed to Phyllis Malin null and void and in fraud of the creditor and directed the Nassau County Clerk to cancel the conveyance. The court then ordered that the premises be sold as one parcel at a public auction. The proceeds were to be subject to a New York bank's first mortgage, "with one half the balance being paid to FDIC ... and the other half of the proceeds ... to Phyllis Malin, [further] subject, however, to payment from her share to FDIC for any attorneys' fees, costs, disbursements, and other expenses as awarded and taxed by the court." App. at 312. The court summarily denied sanctions against Leonard and Phyllis Malin but awarded reasonable attorneys' fees to the FDIC pursuant to section 276-a of the Debtor and Creditor Law, N.Y. Debt. & Cred. Law § 276-a (McKin-

ney 1945 & Supp.1986), "[b]y virtue of this court's finding of Leonard Malin's actual intent to defraud." App. at 314.

## DISCUSSION

The Malins essentially challenge the propriety of the district court's findings of fact and conclusions of law with respect to New York Debtor and Creditor Law sections 273, 273–a and 276. They maintain that the court's conclusions of actual intent to defraud under section 276 and presumptive fraud under sections 273 and 273–a were clearly erroneous. FDIC, on the other hand, argues that the district court's findings were adequately supported by the record and may not be disturbed on appeal. Br. of Appellees at 8. Our reading of New York Debtor and Creditor Law section 278, however, convinces us that we need not review the district court's finding that the conveyance from Leonard Malin to his wife was presumptively and actually fraudulent as to the FDIC. Instead, we conclude that even if such a conveyance were fraudulent, the FDIC, as a judgment creditor of Leonard Malin, may not maintain a suit against Phyllis Malin who purchased the property in good faith and without knowledge of the FDIC's prior default judgment against her husband.

Section 278 of New York Debtor and Creditor Law provides in pertinent part:

1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person *except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase,* or one who has derived title immediately or mediately from such a purchaser.

   a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

   b. Disregard the conveyance and attach or levy execution upon the property conveyed.

N.Y. Debt. & Cred. Law § 278 (McKinney 1945 & Supp.1986) (emphasis added).

In order for a transferee to have priority over a judgment creditor by virtue of the exemption under section 278, the conveyance must have occurred prior to the time the judgment creditor obtained a lien on the property. *See* N.Y. C.P.L.R. § 5203 (McKinney 1978). Once such a transaction has been completed, a purchaser without knowledge of the vendor's fraud would occupy a preferred position under the statute, thereby barring any suit by a subsequent judgment creditor attempting to levy on the property. The crucial question facing us, therefore, is whether the separation agreement, entered into before the creation of the judgment creditor's lien, is a "conveyance" of real property which would trigger the operation of section 278's procedural bar. If indeed the transaction at issue constitutes a present conveyance, we must then determine whether the remaining elements of *bona fide* purchaser status under section 278 are satisfied. The conclusion that Phyllis Malin is entitled to the protection of section 278 thus entails a determination of several issues to which we now turn *seriatim.*

### A. *Separation Agreement*

In order for one to claim the protection offered by section 278, one must occupy the position of a "purchaser" within the meaning of its provisions. *Morse v. Howard Park Corp.,* 50 Misc.2d 834, 272 N.Y. S.2d 16 (1966). FDIC adamantly maintains that the separation agreement entered into between Leonard and Phyllis Malin on September 15, 1982, was not a "conveyance" within the meaning of New York Real Property Law section 290(3). Br. of Appellee at 20. According to FDIC, the separation agreement was at most an executory contract to convey the subject property. *Id.* FDIC's argument would require the conclusion that Leonard's property was not conveyed as a matter of law on September 15, the time of the separation agreement. If correct, FDIC's docketing of October 27 would predate Leonard's December 9 attempt to convey the property and FDIC's claim to title would thus prevail.

As illustrated, FDIC's attempt to stave off the operation of section 278 is premised on its view of the separation agreement as an executory contract rather than as a present conveyance of land under section 290(3). For the reasons discussed below, however, we believe that New York courts would treat the separation agreement as a conveyance.

The agreement executed by the parties on September 15, 1982, provides as follows:

3.05 The marital home is currently owned by the parties jointly with rights of survivorship. Husband agrees to execute any necessary documents to effect a transfer of his interest in the marital home to the Wife at the request of the Wife. *It is the intent of the parties that upon the signing of this agreement, Wife shall have sole and exclusive beneficial and actual ownership of the marital home.* It shall be the Wife's exclusive obligation to make all payments for all expenses related to the marital home including, but not limited to, mortgage payments, real estate taxes, insurance, upkeep, gardening, and maintenance both regular and extraordinary.

App. at 209 (emphasis added). Further, the parties agreed:

9.01 The Wife is, *by virtue of this agreement*, the sole owner of the home located at 933 Whitehall Drive, North Woodmere, New York 11581 and shall have the exclusive occupancy and possession of said home.

App. at 214 (emphasis added).

From the plain language of the agreement, it is beyond peradventure that Leonard Malin's property was intended to pass to Phyllis Malin upon the signing of the document. "It is ... well established in New York that, where the expressed intention of the contracting parties is clear, a contrary intention will not be created by implication." *Neuman v. Pike,* 591 F.2d 191, 194 (2d Cir.1979) (citing *Hellman v. Samuel Goldwyn Productions,* 26 N.Y.2d 175, 180–81, 309 N.Y.S.2d 180, 257 N.E.2d 634 (1970)). It would be inappropriate for

us to adopt a construction of the agreement which would run counter to this clear expression of intent. We therefore reject FDIC's contention that the separation agreement is nothing more than an executory contract to convey real property.

■ Section 290(3) of New York Real Property Law defines the term "conveyance" as follows:

The term "conveyance" includes every written instrument, by which any estate or interest in real property is created, transferred, mortgaged or assigned, or by which the title to any real property may be affected, including an instrument in execution of a power, although the power be one of revocation only, and an instrument postponing or subordinating a mortgage lien; except a will, a lease for a term not exceeding three years, an executory contract for the sale or purchase of lands, and an instrument containing a power to convey real property as the agent or attorney for the owner of such property.

N.Y. Real Prop.Law § 290(3) (McKinney 1968). An executory contract, on the other hand, is one in which the promisee's rights do not immediately come into existence but are conditioned upon some further performance, usually by the promisee. *See* Farnsworth, *Contracts* § 1.3, at 8 (1982). Here no such condition on the promisee's performance was imposed. It was not, for example, made contingent on the parties' obtaining a divorce. Instead, the parties clearly intended an immediate transfer of ownership "upon the signing of this agreement." App. at 209.

■ A review of New York case law confirms our characterization of the instrument. In *McGurl v. Burns,* 192 Misc. 1045, 81 N.Y.S.2d 51 (1948), a promissory note reading in part, "we resign any further claim to property at ..." was held to be a conveyance. Likewise, in *Turner v. May,* 202 Misc. 320, 117 N.Y.S.2d 778, 780 (1952), a holograph containing the words "I relinquish all rights and interest in the farm located in New Lebanon and Chatham in the County of Columbia," was effective

to convey real property. These decisions recognize the principle that the expressed intentions of the parties prevail over the form of the instrument. Where that intention is unambiguous, as in the case at bar, we have little difficulty in concluding that the agreement is sufficient to create presently enforceable property rights. *See also Savings & Loan Ass'n of Kingston v. Berberich*, 24 A.D.2d 187, 264 N.Y.S.2d 989, 991 (3rd Dep't 1965) (unrecorded agreement for a mortgage is a conveyance); *In re Maul's Will*, 176 Misc. 170, 26 N.Y.S.2d 847, 851 (Sup.Ct. Erie Co.) (waiver by spouse of right to elective share is conveyance as it released marital rights as effectively as a deed would have), *aff'd*, 262 A.D. 941, 29 N.Y.S.2d 429 (4th Dep't 1941), *aff'd without opinion*, 287 N.Y. 694, 39 N.E.2d 301 (1942); *In re Euro-Swiss Int'l Corp.*, 33 B.R. 872, 880–81 (Bkrtcy.S. D.N.Y.1983) (sublease and assignment are conveyance); *cf. Larchmont Nat'l Bank & Trust Co. v. Bay Shore Bldg. & Constr. Co.*, 228 A.D. 640, 238 N.Y.S. 87, 88 (2nd Dep't 1929) (assignment of mortgage and subordination agreement were both conveyances). We therefore hold that, for purposes of section 278, Leonard Malin's interest in the single family house in North Woodmere, New York, was conveyed to Phyllis Malin on September 15, 1982, pursuant to the parties' separation agreement.

## B. *Section 278*

Our conclusion that the separation agreement properly is characterized as a conveyance within the meaning of New York Real Property Law section 290(3) does not end the inquiry. Phyllis Malin must also satisfy the remaining elements of section 278 to claim its benefits. Specifically, it must be determined whether Phyllis was "a purchaser for fair consideration without knowledge of the fraud at the time of the purchase." N.Y. Debt. & Cred. Law § 278 (McKinney 1945 & Supp.1986).

As to the element of Phyllis Malin's knowledge of the prior default judgment obtained against her husband, the district court specifically ruled that "[a]lthough it is unnecessary to this proceeding to find that Phyllis Malin knew, or should have known, about Leonard Malin's indebtedness to the plaintiff, this court finds that she had no such knowledge." App. at 288. Appellee does not contest this finding on appeal but argues that the purchaser's knowledge *vel non* is irrelevant to the issues in the case. Br. of Appellee at 16. While undoubtedly this is true in the context of the presumptive and actual fraud provisions of New York Debtor and Creditor Law, the transferee's good faith is placed directly in issue by the terms of section 278, New York Debtor and Creditor Law. Because it appears that the district court's finding is adequately supported by the record and absent any challenge by appellees, we do not disturb it.

The remaining element of section 278 *bona fide* purchaser status, therefore, is whether Phyllis Malin purchased the property from her husband for "fair consideration." As defined by section 272 of New York Debtor and Creditor Law, fair consideration includes an exchange of property or obligation in satisfaction of an antecedent debt. Thus: "Fair consideration is given for property, or obligation ... [w]hen in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied...." N.Y. Debt. & Cred. Law § 272 (McKinney 1945 & Supp. 1986). In the domestic relations context, it is well settled in New York that a husband's obligation to support his wife is an antecedent debt sufficient to satisfy the definition of fair consideration. *Vinlis Construction Co. v. Roreck*, 67 Misc.2d 942, 325 N.Y.S.2d 457, 462 (1971) (antecedent debt is fair consideration even though it arises out of the husband's obligation of support), *aff'd*, 43 A.D.2d 911, 351 N.Y.S.2d 648, *motion for leave to appeal dismissed in part, denied in part*, 35 N.Y.2d 715, 361 N.Y.S.2d 645, 320 N.E.2d 277 (1974); *Orbach v. Pappa*, 482 F.Supp. 117, 120 (S.D.N.Y.1979) (same).

In *Safie v. Safie*, 17 N.Y.2d 601, 268 N.Y.S.2d 561, 215 N.E.2d 682 (1966), *mem. aff'g* 24 A.D.2d 502, 261 N.Y.S.2d 993

(1965), the New York Court of Appeals affirmed the dismissal of an action brought by a judgment creditor of the husband under section 273. Evidence in that case established that the judgment debtor and his wife had been living apart since 1958. On June 4, 1962, the husband conveyed the marital home to his wife and then travelled to Europe. The judgment creditor obtained a default judgment against the husband on August 29 of that same year. In a memorandum decision, the Court of Appeals affirmed the Supreme Court's holding that a husband's obligation of support was an antecedent debt satisfying the definition of fair consideration as set forth in section 272. The appellant, therefore, was not able to maintain an action to set aside the conveyance under section 273 of New York Debtor and Creditor Law.

■ Applying the definition of fair consideration established by section 272 and as refined by New York precedent, we likewise conclude that the conveyance at issue here was entered into for fair consideration. At the time the separation agreement was executed, Leonard Malin was under an affirmative obligation to provide support to his wife. N.Y.Fam.Ct. Act § 412 (McKinney 1983 & Supp.1986); *Haas v. Haas*, 298 N.Y. 69, 71–72, 80 N.E.2d 337 (1948); *Goldman v. Goldman*, 282 N.Y. 296, 299, 26 N.E.2d 265 (1940). Additionally, he had antecedent liability for maintenance and child support. In satisfaction of his antecedent debts, Leonard Malin conveyed real estate and other property to his wife. This exchange thus satisfies the element of fair consideration as defined by section 272.

In its findings of fact and conclusions of law, the district court found that the conveyance was made without fair consideration because the proof did not show "the amount Phyllis Malin would ordinarily be entitled to, pursuant to the law of equitable distribution" and because the consideration for the transfer was "in no way identified other than by the statement of . . . Leonard Malin, that he 'couldn't care less about [the property's] value.'" App. at 310. The

court concluded that the presumed fraud provision of both sections 273 and 273–a had been violated.

It is important to note that under section 278, the focus is on the good faith of the *transferee* as opposed to the transferor. Thus, in *Epstein v. Goldstein*, 107 F.2d 755 (2d Cir.1939) (applying New York law), we upheld a conveyance from a husband to his wife even if it had been made with the actual intent to defraud his creditors. This result was compelled by the wife's ignorance of her husband's insolvency or indebtedness to the plaintiff. *Epstein* remains an accurate statement of New York law. *Cf. Morse v. Howard Park Corp.*, 50 Misc.2d 834, 272 N.Y.S.2d 16, 22–26 (Sup.Ct. Queens Co.1966) (fraudulent conveyance cannot be set aside against transferee for valuable consideration who lacked notice of transferor's debt to creditor); *Hutchinson v. Emerson*, 47 Misc.2d 419, 262 N.Y.S.2d 687, 689 (Sup.Ct. Nassau Co. 1965) (innocent purchaser for value is protected), *aff'd mem.*, 26 A.D.2d 580, 272 N.Y.S.2d 963 (2nd Dep't 1966). To the extent, therefore, that the district court found no consideration for the transfer because Leonard Malin lacked good faith, that ruling was in error. As we have noted previously, Phyllis Malin possessed the requisite good faith to satisfy section 278 *bona fide* purchaser status.

The district court also failed to find consideration because the conveyance to Phyllis Malin was not made for equivalent value.

First, the notation "No Consideration" on the deed is not determinative because the consideration pertinent for purposes of a real estate transfer might not apply for other purposes. *Marine Midland Bank-New York v. Batson*, 70 Misc.2d 8, 332 N.Y.S.2d 714, 717–18 (Sup.Ct.1972); *see also Berkowitz v. Berkowitz*, 111 A.D.2d 434, 488 N.Y.S.2d 493, 494–95 (3rd Dep't 1985); *but see id.* at 495–96 (Yesawich, *J.*, dissenting). Second, the Malins maintain that "[t]he consideration was the agreed upon distribution of the Malins' marital property in connection with the . . . dissolu-

tion of [their] marriage ... after a five-year separation." Br. of Appellant at 16. We agree. A matrimonial separation agreement works the relinquishment of rights and remedies otherwise conferred by law. Moreover, the Malins' separation agreement has the earmark of a "bargained for" contract, particularly in the non-boilerplate language relating specifically to this couple and their children.[1] Additionally, the husband admitted that he had been living with a woman other than his wife for several years prior to his divorce. In 1984 he received an uncontested divorce and the freedom to remarry in exchange for a house, alimony and other benefits to Mrs. Malin. The house that he gave up would provide a home for his minor child. Also, as previously noted, he had antecedent liability for maintenance and child support. This exchange constitutes fair equivalent value and the district court clearly erred in finding that there was no proof of such. *See Berkowitz*, 488 N.Y. S.2d at 495 (transfer in consideration of marriage constitutes "fair consideration").

█ Finally, the FDIC complains that the separation agreement of September 15 was not recorded. Br. of Appellee at 20. Failure to record such an agreement would thus render appellee without record notice of the conveyance. However, under New York law, a judgment creditor occupies a less favored position than a subsequent *bona fide* purchaser would otherwise occupy vis-a-vis a prior purchaser. *Sullivan v. Corn Exchange Bank*, 154 A.D. 292, 296, 139 N.Y.S. 97 (1912). As a judgment creditor, the FDIC is not entitled to the protection of the recording acts. *Id.* at 295–96 (judgment creditor not a purchaser within meaning of recording statute); *Suffolk County Federal Savings & Loan Ass'n v. Geiger*, 57 Misc.2d 184, 291 N.Y.S.2d 982, 985 (1968) (same); *In re Euro-Swiss Int'l Corp.*, 33 B.R. 872, 880–81 (Bkrtcy.S.D.N. Y.1983) (same). The FDIC, therefore, is in no position to complain that the failure to

record the separation agreement renders the conveyance ineffectual as against its subsequent lien. New York simply has not permitted judgment creditors the same measure of protection it affords to subsequent purchasers for value who rely on record ownership in making their purchases.

In sum, we conclude that Leonard Malin conveyed his property to his wife on September 15, 1982, when no judgment was as yet docketed against him. Accordingly, Phyllis Malin, as a subsequent *bona fide* purchaser for value, is entitled to the protection of section 278 New York Debtor and Creditor Law. We therefore reverse the dismissal of her counterclaim that the FDIC's interest in the real property at issue is subordinate to her fee simple ownership interest in the land. She was entitled to such a declaration under New York law. *See* N.Y. Real Prop.Acts. § 1501(1) (McKinney 1979 & Supp.1986).

### C. *Attorneys' Fees and Sanctions*

The district court awarded attorneys' fees to the FDIC pursuant to section 276–a of the Debtor and Creditor Law, N.Y. Debt. & Cred. Law § 276–a (McKinney 1945 & Supp.1986), based upon its finding that Leonard Malin had actual intent to defraud the FDIC. Because we disagree with the district court that the fraud provisions of New York Debtor and Creditor Law control the disposition of the case, we reverse the award of attorneys' fees under this section as well.

We have reviewed the FDIC's cross-appeal from the district court's denial of sanctions and are unpersuaded that the court abused its discretion in so holding.

We vacate the district court's amended judgment of September 30, 1985, and remand to the district court for entry of a new judgment consistent with this opinion.

---

1. The agreement specifies, for example, that the minor child shall not assume the name of any subsequent husband of the wife and that each

party shall be entitled to information from any college, school or camp. App. at 207.