**CHEMTEX, LLC, Plaintiff,**

v.

**ST. ANTHONY ENTERPRISES, INC., Anthony Sicari Apparel Group Industries, Inc., Century Business Credit Corp., Defendants.**

No. 03 CIV. 4263(RWS).

United States District Court,
S.D. New York.

May 30, 2007.

Schaeffer & Krongold, LLP by Elliot L. Schaeffer, Esq., New York City, for Plaintiff.

Hahn & Hessen LLP by John P. Amato, Esq., Maria A. Arnott, Esq., New York City, for Defendant.

*OPINION*

SWEET, District Judge.

Defendant, Century Business Credit Corporation ("Century") has moved under Rule 56, Fed.R.Civ.P., for summary judgment dismissing the complaint of plaintiff, Chemtex, LLC ("Chemtex"), as against Century. For the reasons set forth below, this motion is granted.

### The Parties

Century is a financial services company providing commercial and trade finance to middle market businesses. Century is a New York corporation with its principal place of business in New York, New York.

St. Anthony Enterprises, Inc. ("SAE") is now a defunct New York corporation that was engaged in the business of importing and distributing embellished women's suits and dresses and was owned and/or operated by Anthony Sicari ("Sicari"), his daughter Toni Lynn Sicari, and Steven Grossman ("Grossman").

Chemtex is a Nevada corporation with its principal offices in La Porte, Indiana.

### Prior Proceedings

Chemtex filed its complaint against defendants SAE, Anthony Sicari Apparel Group Industries, Inc. ("ASAGI"), and Century on June 11, 2003. Discovery proceeded by order of June 9, 2005. SAE and ASAGI were dismissed without prejudice as of June 9, 2005, the Court having received notice of their filing in bankruptcy.

The instant motion was filed on June 21, 2005, but was adjourned by the parties to September 27, 2006. The motion was then marked off by the Court for failure to prosecute on September 13, 2006, with leave to restore to the calendar by letter. The motion was finally heard and marked fully submitted on November 1, 2006.

### The Facts

The facts are found based upon Century's Statement of Undisputed Facts pursuant to Local Civil Rule 56.1 (the "Century Statement"). Chemtex submitted its Statement of Undisputed Facts pursuant to Local Civil Rule 56.1 but did not oppose the Century Statement, which is therefore accepted as true. *See* Local Civil Rule 56.1(c); *Gubitosi v. Kapica*, 154 F.3d 30, 31 (2d Cir.1998) (accepting as true facts set forth in unopposed Local Civil Rule 56.1 statement). The facts set forth below are not disputed except as noted.

### 1. The Transactions at Issue

Century and SAE entered into a factoring agreement ("SAE's Factoring Agreement") on March 6, 1998. Century received an assignment of all of SAE's

Receivables, as defined in the Factoring Agreement, and a first-priority security interest and general lien upon SAE's Receivables, General Intangibles, and all of its property of every kind and description. Century perfected its lien by filing UCC–1 financing statements with the appropriate authorities.

Under the SAE's Factoring Agreement, Century would advance funds to SAE for the conduct of its business against the purchase price of SAE's accounts receivable. (Goll Aff., June 21, 2005 ("Goll Aff."), ¶ 14.) In return, Century received interest on the funds advanced, fees, and a commission on each of SAE's receivables. In conjunction with entering into the SAE's Factoring Agreement, SAE also executed and delivered to Century: (a) a Security Interest in Inventory Under Uniform Commercial Code, dated March 6, 1998, granting Century a security interest in, among other things, all of SAE's Inventory (as such term is defined therein) whether now owned, or thereafter acquired, and all books and records pertaining to the foregoing; and (b) a Letter of Credit Security Agreement dated March 6, 1998, setting forth the terms and conditions of Century's issuance of letters of credit on behalf of SAE.

As collateral security for SAE's obligations to Century, certain individuals executed and delivered to Century documents entitled "Client Cash Collateral Letter," which are substantially identical in form (collectively, the "Cash Collateral Letters"). The Cash Collateral Letters provided that the monies each depositor deposited with Century were to be held by Century and applied to reduce SAE's indebtedness in the event of a default or non-payment on the part of SAE. Century also received individual unlimited personal guaranties of SAE's debts and obligations to Century from SAE's principals, Sicari and Grossman.

In or about the summer of 2000, Grossman ended his association with SAE and on or about December 5, 2000, terminated his guaranty as to all of SAE's prospective indebtedness to Century.

In late 2000, Sicari advised Century that he wished to wind down the business of SAE and concentrate on a new company he had formed with Carmine Capone ("Capone"), called Anthony Sicari Apparel Group Industries, Inc. ("ASAGI"). Capone had previously operated a profitable, private label business under the name of Caresta, Inc. ("Caresta") that was part of the Dresses for Less group of companies. (*Id.* ¶ 18; Def.'s Ex. 12 at 48.) Capone brought customers, staff, and business to the new venture, including existing orders and inventory, and contributed his expertise in design and selling.

Century performed a judgment search against Sicari and Capone. The search revealed judgments against Sicari in excess of $6,000,000.00, including gambling debts, unpaid taxes, and unpaid claims of another factor. Goll testified that he: (1) asked Sicari if all the judgments had been satisfied and that Sicari replied in the affirmative; (2) asked Sicari's lawyer if the judgments had been satisfied and received an affirmative answer; and (3) was satisfied with this level of inquiry. No satisfaction of judgments were requested or produced, and Sicari denied telling Century of the satisfaction.

Century agreed to refinance ASAGI on the understanding that SAE's debt to Century would be paid in full. To offset a potential loss on its investment if SAE were to immediately close its doors, Century agreed to work with SAE to liquidate its business and fund amounts reasonably necessary to cover SAE's general operating expenses, overhead and any other necessary costs to enable SAE to sell its remaining inventory and collect accounts

receivable. According to Century, no transfer of assets occurred between SAE and ASAGI in or about October 2000 or thereafter. (Goll Aff. ¶¶ 5, 28–29; Def.'s Ex. 12 at 55–56.)

On November 28, 2000, Century entered into a factoring agreement with ASAGI ("ASAGI's Factoring Agreement") and was granted a first-priority security interest and general lien upon all of ASAGI's assets. (Goll Aff. ¶ 24; Def.'s Ex. 10.) In connection with the ASAGI's Factoring Agreement, Century advanced funds to ASAGI and provided other financial accommodations. As of May 31, 2005, ASAGI was indebted to Century in the amount of $1,646,639.00.

At the time the ASAGI account was opened in November 2000, Century did not request any additional cash or other collateral to secure the borrowings of ASAGI other than as provided in the personal guarantees of Capone and Sicari and the cross-corporate guarantee of Caresta and SAE.

ASAGI's factored sales for December 2000 were approximately $1,935,000.00. According to Chemtex's expert, ASAGI's factored sales for January 2001 were approximately $2,484,000.00 (Pl.'s Ex. 39), of which approximately $1,607,000.00 was to SAE former customers (Pl.'s Ex. 40).

In or about June 2001, at a time when SAE was indebted to Century in an amount in excess of $757,000, Century applied cash collateral to reduce the outstanding obligation owed by SAE to Century as follows: (a) $88,557.31 plus accrued interest from May 31, 2001 from Grossman; (b) $29,519.12 plus interest from Harvey Zaken; and (c) $234,686.88 from Toni Lynn Sicari.

On April 2, 2002, Century applied additional cash collateral in the amount of $101,00 received from Sicari. At the time, SAE's then outstanding obligations to Century were in excess of $192,000. The balance of SAE's obligations to Century was ultimately satisfied on or about July 31, 2003.

In the period from December 1999 to June 2000, Chemtex made letters of credit available to SAE based upon an oral agreement with Sicari. Payments were made by SAE and ASAGI to Chemtex, although Sicari has denied receiving the goods covered by the letters. According to SAE, Chemtex opened certain letters of credit for the importation of goods by SAE, but SAE has denied the terms of payment or that payment is due to Chemtex. Although requested to do so by Chemtex, neither SAE nor Sicari executed a guaranty, corporate promissory note, or security agreement in favor of Chemtex for any amounts due.

Prior to opening any letters of credit for SAE's importation of goods, Chemtex received and reviewed a copy of SAE's financial statement dated September 30, 1999, and was aware that Century was SAE's senior secured lender.

Chemtex did not publicly file any security agreement, note, or other financing document that may have put Century on notice of its claim, and Chemtex made no attempt to obtain a judgment from SAE for three years after its alleged claim became due. Chemtex did not notify Century, either orally or in writing, of a claim against SAE, and Century did not know about any such claim against SAE until this action was commenced. (Goll Aff. ¶ 30.)

SAE provided Chemtex with copies of its account statements from Century for the period May 31, 2000, through May 31, 2001, reflecting that Century was undersecured.

### Discussion

**1. The Summary Judgment Standard**

Summary judgment is granted only if there is no genuine issue of material fact,

and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *SCS Commc'ns, Inc. v. Herrick Co., Inc.,* 360 F.3d 329, 338 (2d Cir.2004); *see generally* 11 James Wm. Moore, et al., *Moore's Federal Practice* ¶ 56.11 (3d ed. 1997 & Supp.2004). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (internal citations omitted). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York,* 72 F.3d 1051, 1060–61 (2d Cir.1995).

A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 57 (2d Cir.1997). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Quarles v. Gen. Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985) ("[T]he mere existence of factual issues-where those issues are not material to the claims before the court-will not suffice to defeat a motion for summary judgment.").

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus., Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gibbs–Alfano v. Burton,* 281 F.3d 12, 18 (2d Cir.2002). Thus, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). The non-movant cannot escape summary judgment, however, "merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture," *W. World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted); *accord Giordano v. City of New York,* 274 F.3d 740, 749–50 (2d Cir.2001), particularly where such speculation is unsubstantiated. *See Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 101 (2d Cir.2001); *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). In other words, the non-movant must invoke more than just "metaphysical doubt as to the material facts." *Matsushita Elec. Indus.,* 475 U.S. at 586, 106 S.Ct. 1348. In order to defeat a motion for summary judgment, the non-moving party must offer sufficient evidence to enable a reasonable jury to return a verdict in its favor. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Byrnie,* 243 F.3d at 101; *Scotto,* 143 F.3d at 114.

542

## 2. Standing

In the Complaint, Chemtex has asserted two claims of fraudulent conveyance against Century. Century has contended that Chemtex does not have the standing to assert such claims.

■ To challenge a conveyance as fraudulent, a plaintiff must suffer prejudice or injury as a result of the conveyance at issue. *See, e.g., HBE Leasing Corp. v. Frank*, 48 F.3d 623, 637 n. 10 (2d Cir. 1995); *A/S Kreditt–Finans v. CIA Venetico De Navegacion, S.A.*, 560 F.Supp. 705, 711 (E.D.Pa.1983) (applying New York law); *Hamilton Nat'l Bank v. Halstead*, 134 N.Y. 520, 523, 31 N.E. 900 (1892). Furthermore, a "creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance . . . ." *Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 508 N.Y.S.2d 17, 25 (N.Y.App. Div.2d Dep't 1986).

■ Therefore, a complaining creditor must first plead and then demonstrate that it had an equity stake in the debtor's assets—that is, that some portion of the debtor's assets would have been available to satisfy the unsecured creditor's claims had there been no conveyance. *See Halstead*, 134 N.Y. at 523–24, 526–27, 31 N.E. 900. Absent any such equity in the assets conveyed, an unsecured creditor lacks standing to challenge the conveyance as fraudulent. *See A/S Kreditt–Finans*, 560 F.Supp. at 710–11 (finding judgment creditor lacked equity, and therefore standing, where pre-existing mortgages encumbering conveyed vessel exceeded vessel's fair market value by over $1.5 million).

Chemtex has contended that, if foreclosed upon, SAE's inventory would have been sold at a foreclosure sale at a twenty-five percent mark-up (equal to SAE's regular selling price). Therefore, according to Chemtex's expert, $454,000 worth of inventory would have garnered a gross profit of $113,500. (*See* Schaeffer Affirmation, Mar. 9, 2006, Ex. B, at 3.) This assumption, however, has been contravened by Century's account executive responsible for the SAE and ASAGI accounts. (*See* Goll Aff. ¶ 21.) Chemtex has also included in SAE's alleged assets approximately $231,000 in the receivables of ASAGI, which Chemtex has claimed belonged to SAE. Under Chemtex's contention, however, Century would have been knowingly extending money twice on the same collateral, since the allegedly diverted receivables were used by ASAGI as part of its collateral base.

It is likely that when SAE's assets are properly calculated, Century would be determined to have been under-collateralized, with no equity remaining to satisfy Chemtex's debt. According to Century's account statement for SAE, there was negative equity in SAE at or about the time Chemtex contends the fraudulent transfer occurred. (*See* Def.'s Ex. 19.) Moreover, more than $450,000 of side-collateral pledged by third parties as additional security was used to satisfy SAE's debt to Century. Given the foregoing, it cannot be concluded that assets were conveyed that had a value in excess of the amounts owed to Century at the time of such conveyance.

Notwithstanding any material issue of fact regarding the equity that existed in SAE at the time of the alleged fraudulent conveyance, for the purposes of addressing Century's remaining arguments, it will be assumed *arguendo* that Chemtex has standing.

## 3. The Statute of Frauds

According to Chemtex, it opened various Letters of Credit to import goods and SAE agreed to reimburse Chemtex the

amounts it paid under the Letters of Credit. (Compl.¶¶ 7–14.) Century asserts that the resulting oral agreement between Chemtex and SAE is not enforceable because it falls within the Statute of Frauds pursuant to New York's UCC, N.Y. UCC § 2–201(1) (McKinney 1993), and New York's General Obligations Law ("GOL"), N.Y. GOL § 5–701(a)(2) (McKinney 2007). (Def.'s Mem. in Supp. 5.) Chemtex contends, however, that it can satisfy the Statute of Frauds under N.Y. UCC § 2–201(1) because: (1) the oral agreement was "reduced to writing" through the issuance of the Letters of Credit; and (2) there was performance through the delivery of goods to SAE and payments made to Chemtex by SAE and ASAGI. (Pl.'s Mem. in Opp'n 10–11.) In addition, Chemtex contends that the agreement falls outside of the Statute of Frauds pursuant to N.Y. GOL § 5–701(a)(1) because it could have been performed within a year. (*Id.*)

Under New York's UCC, a contract for the sale of goods for the price of $500 or more is not enforceable unless "there is some writing ... signed by the party against whom enforcement is sought or by his authorized agent or broker." N.Y. UCC § 2–201(1). Chemtex has asserted that the Letters of Credit satisfy this Statute of Frauds. Assuming, *arguendo*, that N.Y. UCC § 2–201(1) applies to the oral agreement, the oral agreement is not confirmed by a writing because the Letters of Credit were issued by a financial institution at the direction of Chemtex and therefore were not signed by SAE.

However, a contract that does not satisfy the requirements of N.Y. UCC § 2–201(1) may still be enforceable under certain circumstances, including "with respect to goods for which payment has been made and accepted or which have been received and accepted ...." N.Y. UCC § 2–201(3)(c). Chemtex has not produced evidence to establish that SAE received the goods covered by the Letters of Credit or that SAE acknowledged any debt owing to Chemtex. SAE did not execute any written acknowledgment of the alleged indebtedness. (Def.'s Ex. 13 at 51–55.) In addition, Sicari has denied that: (1) SAE received any of the goods that were covered under the Letters of Credit; (2) he or anyone else on behalf of SAE orally promised to pay for the goods imported under the Letters of Credit; (3) SAE is indebted to Chemtex; and (4) the payments made to Chemtex were in satisfaction of the alleged debt owed by Chemtex. (Def.'s Ex. 20 at 340–360.)

■ In its Complaint, however, Chemtex has alleged that both SAE and ASAGI made payments to Chemtex which were applied against the outstanding balances on the Letters of Credit. (*See* Compl. ¶¶ 18, 20, 28, 30–32, 35.) Applying the doctrine of part performance, such payments would except the oral agreement from the State of Frauds. *See, e.g., Beautiful Jewellers Private Ltd., v. Tiffany & Co.,* No. 06 Civ. 3085(KMW), 2007 WL 867202, at *3 (S.D.N.Y. Mar. 21, 2007).

■ In the alternative, Chemtex relies upon N.Y. GOL § 5–701(a)(1) for the proposition that the possibility of performance within one year takes the promise outside the Statute of Frauds.[1] This provision of

---

1. The statute states:

a. Every agreement, promise, or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to completed before the end of a lifetime ....

N.Y. GOL § 5–701(a)(1).

the statute has been narrowly construed as only applying to those contracts with no possibility of full performance within one year. *See, e.g., Marini v. D'Apolito*, 162 A.D.2d 391, 557 N.Y.S.2d 45, 46 (N.Y.App. Div. 1st Dep't 1990); *Samilson v. Stahlwood Toy Mfg., Co., Inc.*, 154 A.D.2d 525, 546 N.Y.S.2d 147 (N.Y.App. Div.2d Dep't 1989). Since "no matter how unlikely . . . , the mere fact that performance in less than one year was even possible precludes application of the statute of frauds," the oral agreement between Chemtex and SAE would therefore fall outside the statute. *Sea Trade Co. Ltd. v. FleetBoston Fin. Corp.*, No. 03 Civ. 10254(JFK), 2007 WL 1288592, at *3 n. 2 (S.D.N.Y. May 1, 2007); *accord Rosbach v. Industry Trading Co.*, 81 F.Supp.2d 522, 525 (S.D.N.Y. 2000).

■ The statute of frauds may still apply to the oral agreement pursuant to N.Y. GOL § 5–701(a)(2), under which "a special promise to answer for the debt, default or miscarriage of another person" must be in writing. N.Y. GOL § 5–701(a)(2); *see also Kleartex (U.S.A.), Inc. v. Matex, Inc.*, No. 91 Civ. 4184(PNL), 1992 U.S. Dist. LEXIS 5597, at *9 (S.D.N.Y. Apr. 24, 1991) (dismissing claims based upon alleged oral guaranty of debt); *Lou Atkin Castings, Inc. v. Fabrikant & Sons, Inc.*, 216 A.D.2d 111, 628 N.Y.S.2d 98, 99 (N.Y.App. Div. 1st Dep't 1995) (finding alleged oral promise by creditor to guaranty debt of its affiliate barred by Statute of Frauds). Whether partial performance unequivocally referable to the alleged agreement removes the agreement from the Statute of Frauds under N.Y. GOL § 5–701 appears to be in dispute. *Compare Alba, P.C. v. Lindenman*, 289 A.D.2d 550, 735 N.Y.S.2d 613, 614 (N.Y.App. Div.2d Dep't 2001), *with Spencer Trask Software & Info, Servs. LLC v. RPost Int'l Ltd.*, 383 F.Supp.2d 428, 450–51 (S.D.N.Y.2003).

Accordingly, given the foregoing analysis and the material issues of fact surrounding the possible partial performance of the oral agreement, it is inappropriate to grant summary judgment based on the Statute of Frauds.

### 4. Century Is Protected from Chemtex's Claims as an Innocent Purchaser for Fair Value

■ The New York Debtor and Creditor Law ("DCL") offers complete protection to an innocent purchaser for value regardless of the intent of the debtor. *See* N.Y. DCL § 278 (McKinney 2001). The statute states:

1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately . . . from such purchaser,

a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

b. Disregard the conveyance and attach or levy execution upon the property conveyed.

*Id.* Courts have recognized this special protective carve-out for innocent purchasers for value under the New York statute. *See, e.g., HBE Leasing*, 48 F.3d at 636 (noting the statute's "policy of protecting innocent creditors or purchasers for value who have received the debtor's property without awareness of any fraudulent scheme").

Century, a purchaser for fair consideration and without knowledge (actual or constructive) of SAE's alleged fraud, is thus entitled to the protection of N.Y. DCL § 278 against the creditors of SAE, including Chemtex.

### a. Fair Consideration

■ Under New York law, "fair consideration" is given for property:

When, in exchange for such property, or obligation, as a fair equivalent therefore, and in good faith, property is conveyed or an antecedent debt is satisfied, or

When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

N.Y. DCL § 272. Thus, "fair consideration" requires both: (a) an exchange of "fair equivalent" value; and (b) "good faith." *See, e.g., In re Sharp Int'l Corp.,* 403 F.3d 43, 53–54 (2d Cir.2005).

Century's extension of loans and advances to ASAGI pursuant to the ASAGI's Factoring Agreement constituted an exchange of fair equivalent value. When a debtor grants a security interest to a lender, the debtor must necessarily receive "reasonably equivalent value" or "fair consideration" in exchange; the value of the collateral is not relevant in determining whether the debtor received reasonably equivalent value in exchange for its granting the security interest, because the rights of a secured creditor in collateral are always restricted by the amount of the debt. *See, e.g., In re AppliedTheory Corp.,* 323 B.R. 838, 841–42 (Bkrtcy. S.D.N.Y.2005). As of May 31, 2005, ASAGI was indebted to Century in an amount in excess of $1.6 million.

Century also acted in good faith. As to the good faith requirement, "under section 278, the focus is on the good faith of the *transferee* as opposed to the transferor." *FDIC v. Malin,* 802 F.2d 12, 19 (2d Cir. 1986) (citing *Epstein v. Goldstein,* 107 F.2d 755, 757 (2d Cir.1939); *Morse v. Howard Park Corp.,* 50 Misc.2d 834, 272 N.Y.S.2d 16, 22–26 (N.Y.Sup.Ct.1966); *Hutchinson v. Emerson,* 47 Misc.2d 419, 262 N.Y.S.2d

687, 689 (N.Y.Sup.Ct.1965), *aff'd mem.,* 26 A.D.2d 580, 272 N.Y.S.2d 963 (N.Y.App. Div. 2nd Dep't 1966)); *accord Buongierno v. Schiller,* 112 A.D. 916, 98 N.Y.S. 464 (N.Y.App. Div.2d Dep't 1906).

Here, Century was never apprised of the Chemtex claim until the commencement of this action. Century agreed to finance what it believed would be a profitable new business Sicari started with another partner on the condition that SAE's debts to Century would be paid in full. In addition, Century continued to lend to SAE to ensure that SAE's receivables and inventory would yield the greatest return in order to reduce SAE's outstanding indebtedness to Century.

### b. Lack of Knowledge

As to Century's knowledge of the alleged fraud, Century could not have been aware of any alleged defrauding of Chemtex since Century was utterly unaware of Chemtex's existence. Century was unaware that SAE obtained financing from Chemtex or that Chemtex was a potential creditor of SAE. Chemtex on the other hand, had actual notice of Century's publicly filed financing statements revealing its security interest and lien upon SAE's assets, as well as Century's status as SAE's senior secured lender.

Accordingly, based on the foregoing analysis, even if there was, *arguendo,* a fraudulent conveyance of assets from SAE to ASAGI, Century is protected as an innocent purchaser for value by N.Y. DCL § 278 from any related claims asserted by Chemtex as against Century.

### 5. Chemtex Has Failed to Show that Century Was an Aider and Abettor

■ To the extent Chemtex seeks to state a claim against Century arising out of Century's alleged aiding and abetting of a purported fraudulent conveyance of as-

sets by SAE to ASAGI,[2] Chemtex must establish: (1) the existence of a violation by the primary wrongdoer; (2) knowledge of the violation by the aider and abettor; and (3) proof that the aider and abettor substantially assisted the primary wrongdoer. *See, e.g., Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 292 (2d Cir.2006) (citing *JP Morgan Chase Bank v. Winnick,* 406 F.Supp.2d 247, 252 (S.D.N.Y.2005); *Franco v. English,* 210 A.D.2d 630, 620 N.Y.S.2d 156, 159 (N.Y.App. Div.3d Dep't 1994)); *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983) (citing *IIT, An Int'l Inv. Trust v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980)).

### a. Violation by the Primary Wrongdoer

With regard to the first element, the existence of a violation by the primary wrongdoer (*i.e.,* SAE), Chemtex has alleged that SAE "assigned or otherwise transferred without adequate consideration all or substantially all of the assets, stock or business of [SAE] to ASAGI" and that "the creation of ASAGI was affected to continue the business of [SAE] by placing its assets beyond the reach of [SAE's] creditors, including Chemtex." (Compl.¶¶ 52, 55.) However, Sicari, the principal of both SAE and ASAGI, has testified that there was no transfer of assets between the two companies. In addition, the Century account executive monitoring the SAE and ASAGI accounts has expressly stated that he was unaware of any conveyance of SAE's property to ASAGI.

### b. Actual Knowledge

Even assuming, *arguendo,* that SAE did engage in a fraudulent conveyance, New York law requires that the alleged aider and abettor have "actual," as opposed to merely constructive, knowledge of the primary wrong. *See, e.g., Lerner,* 459 F.3d at 292 (citing *Kolbeck v. LIT Am., Inc.,* 939 F.Supp. 240, 246 (S.D.N.Y.1996); *Winnick,* 406 F.Supp.2d at 252 n. 4). As courts in this federal district have recognized, " 'The burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy one.' " *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC,* No. 03 Civ. 2387 LAK, 2007 WL 926916 (S.D.N.Y. Mar. 27, 2007) (quoting *Terrydale Liquidating Trust v. Barness,* 611 F.Supp. 1006, 1027 (S.D.N.Y.1984)).

Here, despite discovery, Chemtex has not come forward with evidence that Century had actual knowledge of any alleged conveyance of SAE's assets to ASAGI in order to defraud SAE's creditors. Nor has Chemtex presented any evidence that Century had any awareness of Chemtex or that Chemtex was a creditor of SAE.

Chemtex alleges that Century had constructive knowledge, *i.e.,* it "knew or should have known," of the alleged diversion of assets from SAE to ASAGI. (*See* Pl.'s Mem. in Opp'n 9.) New York courts, however, have uniformly required that a defendant have actual knowledge of the alleged fraud to sustain a claim for aiding and abetting. *See, e.g., Lerner,* 459 F.3d at 292 (citing *Kolbeck,* 939 F.Supp. at 246); *Pension Comm. of Univ. of Montreal Pen-*

---

**2.** It is not clear from the Complaint whether it was Chemtex's intent to assert a claim for aiding and abetting a fraudulent conveyance or conspiracy. In the Complaint, Chemtex has asserted two different causes of action, both of which are labeled the "fourth cause of action" and "Fraudulent Conveyance." (*See* Compl. ¶¶ 79–93.) In its memorandum of law on the instant motion, however, Chemtex

has opposed Century's assertions regarding an aiding and abetting claim and has not indicated that it intended instead or in addition to assert a claim of conspiracy. Therefore, the Court is treating the final and fifth cause of action as one for aiding and abetting a fraudulent conveyance rather than as one for conspiracy.

*sion Plan v. Banc of Am. Sec., LLC*, 446 F.Supp.2d 163, 201–03 (S.D.N.Y.2006) (rejecting "constructive knowledge" and "recklessness" as sufficient to state claim for aiding and abetting).

Specifically, Chemtex contends that circumstantial evidence infers actual knowledge. (*See* Pl.'s Mem. in Opp'n 8–9.) This evidence includes the following: (1) $231,000 in ASAGI's accounts receivable bore an invoice date prior to the execution of the ASAGI's Factoring Agreement; (2) SAE and ASAGI sold similar inventory to some of the same customers; and (3) ASAGI could not have generated "almost $2.4 million in sales without any material purchase of inventory." (*Id.* at 8–9.)

Even if the "facts" alleged by Chemtex should have put Century on notice that SAE may have engaged in fraudulent conduct, Century had no duty to disclose that conduct to Chemtex, nor did Century have any duty to take any action on Chemtex's behalf. New York courts have routinely held that when a defendant is under no independent duty, even alleged ignorance of obvious warning signs of fraud will not suffice to adequately allege "actual knowledge." *See, e.g., Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, No. 98 Civ. 4960(MBM), 1999 WL 558141, at *8 (S.D.N.Y.1999) ("allegations that a bank 'disregard[ed] ... suspicious circumstances which might have well induced a prudent banker to investigate' do not suffice to state a claim for [aiding and abetting]").

*JP Morgan Chase Bank v. Winnick*, 406 F.Supp.2d 247 (S.D.N.Y.2005), as cited by Chemtex, is not helpful to its cause. In that case, the court refused to dismiss an aiding and abetting claim based, in part, on the plaintiff's production of email exchanges and memos by, among, and to the defendants detailing the transactions at the core of the fraudulent scheme and defendants' understanding thereof. No such documents have been offered by Chemtex in this case.

#### c. Substantial Assistance

The final element of an aiding and abetting claim is "substantial assistance." A defendant provides substantial assistance only if it "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables [the fraud] to proceed." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 284 (2d Cir.1992); *accord Fraternity Fund Ltd.*, 2007 WL 926916 (citing *Lerner*, 459 F.3d at 295); *In re WorldCom. Inc. Sec. Litig.*, 382 F.Supp.2d 549, (S.D.N.Y.2005) (quoting *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 354 F.Supp.2d 357, 378 (S.D.N.Y. 2005)). Mere inaction is insufficient to sustain a claim for aiding and abetting fraud unless the defendant has an independent duty to the plaintiff. *See, e.g., Armstrong*, 699 F.2d at 91 ("Inaction on the part of the alleged aider and abettor ordinarily should not be treated as substantial assistance ... except when ... it was in conscious and reckless violation of a duty to act."); *Ryan v. Hunton & Williams*, No. 99–CV–5938(JG), 2000 WL 1375265, at *10 (E.D.N.Y. Sept. 20, 2000) ("Absent a confidential or fiduciary relationship between the plaintiff and the aider and abettor, the inaction of the latter does not constitute substantial assistance ....."). Although there is debate on the issue, "substantial assistance" has also been equated with proximate cause in the aiding and abetting context. *See, e.g., Fraternity Fund Ltd.*, at 371 n. 113 (citing cases).

Again, Chemtex has not adduced any evidence, despite discovery, that Century either affirmatively assisted SAE in an effort to defraud Chemtex through an alleged conveyance of SAE's assets to ASAGI or in any way helped to conceal any such alleged conveyance. Furthermore,

since Century did not owe a fiduciary duty to Chemtex, *see infra,* any inaction on Century's part would not constitute "substantial assistance" sufficient to impose aider and abettor liability on Century, even if Century had known of any effort to defraud Chemtex. *See In re Sharp Int'l Corp.,* 403 F.3d 43 (holding that secured lender can be paid in full by borrower it knows is being looted by owners without any duty to warn other lenders and without providing "affirmative assistance").

■ Moreover, a secured lender has the right to protect its own interests when making decisions to enforce its contractual foreclosure rights and such decisions cannot give rise to a claim that the lender substantially assisted its borrower's alleged fraud upon another party. *See generally Albion Alliance Mezzanine Fund, L.P. v. State Bank & Trust Co.,* 8 Misc.3d 264, 797 N.Y.S.2d 699, 706 (N.Y.Sup.Ct. 2003), *aff'd,* 2 A.D.3d 162, 767 N.Y.S.2d 619 (N.Y.App. Div. 1st Dep't 2003). SAE's Factoring Agreement and Inventory Security Agreement with Century each provides that Century *may,* but is not required to, take possession of SAE's assets in the event of a default.

Finally, the New York Court of Appeals has construed the N.Y. DCL as providing for a claim of aiding and abetting a fraudulent transfer only against those who actually participate in the transfer (i.e., a transferee) or benefit from the conveyance. *See Stochastic Decisions, Inc. v. DiDomenico,* 995 F.2d 1158, 1172 (2d Cir. 1993) (citing *FDIC v. Porco,* 75 N.Y.2d 840, 552 N.Y.S.2d 910, 552 N.E.2d 158, 159–60 (1990)); *Fundacion Presidente Allende v. Banco de Chile,* No. 05 CV 9771(GBD), 2006 WL 2796793, at *3 (S.D.N.Y. May 29, 2006) (citing cases); *Lippe v. Bairnco Corp.,* 218 B.R. 294, 302–03 (S.D.N.Y.1998) (citing *Porco,* 552 N.Y.S.2d 910, 552 N.E.2d at 159–60). "Moreover, a creditor cannot seek mone-

tary damages against a party on an aiding and abetting theory of fraudulent conveyance." *Fundacion Presidente Allende,* 2006 WL 2796793, at *3 (citing *Geren v. Quantum Chem. Corp.,* 832 F.Supp. 728, 737 (S.D.N.Y.1993); *Atlanta Shipping Corp., Inc. v. Chem. Bank,* 631 F.Supp. 335, 348 (S.D.N.Y.1986), *aff'd* 818 F.2d 240 (2d Cir.1987)). Chemtex has failed to establish that Century had any control over the assets that were allegedly conveyed or that Century derived any benefit from the alleged conveyance.

Accordingly, based on the foregoing analysis, any claim for aiding and abetting a fraudulent conveyance asserted by Chemtex against Century is dismissed.

**6. As the Secured Creditor of SAE, Century Did Not Owe Any Duty to Chemtex**

Chemtex has asserted that Century had a duty as a secured creditor to dispose of SAE's assets. (Pl.'s Mem. in Opp'n 5–7.) Even as a secured creditor of SAE, however, Century was not duty-bound to take possession of and sell SAE's assets.

■ A secured creditor owes no duty to anyone to foreclose its lien on a borrower's assets after a default. *See William Iselin & Co. v. Burgess & Leigh, Ltd.,* 52 Misc.2d 821, 276 N.Y.S.2d 659, 661–63 (N.Y.Sup.Ct.1967) (finding no material issue of fact as to commercial factor's rights in collateral created by an agreement between commercial factor and debtor). Specifically, UCC § 9–610 states that a secured party "may" exercise its rights under Article 9 to sell, lease or otherwise dispose of any collateral. UCC § 9–610(a) (2000). As previously mentioned, SAE's Factoring Agreement and Inventory Security Agreement with Century each provides that Century *may,* but is not required to, take possession of SAE's assets

in the event of a default. (Def.'s Ex. 3 ¶ 14; Def.'s Ex. 5 ¶¶ 3,6.)

In addition, as of December 31, 2000, the date Chemtex claims that Century should have foreclosed on SAE's assets, SAE was indebted to Century in the amount of $691,000, with inventory of $453,775 and accounts receivable of approximately $114,920. This would have left Century under-collateralized by more than $130,000.

There was an additional $400,000 in cash collateral deposits, but these deposits were posted with Century by third parties to be held as collateral security for SAE's obligations to Century under the SAE Factoring Agreement and related documents. In the event of a default or non-payment by SAE and Century's application of the cash collateral deposits, the third party posting the collateral deposit would become subrogated to the rights of the creditor, Century. *See, e.g., Filner v. Shapiro,* 633 F.2d 139, 142 (2d Cir.1980) (finding duty to pay principal's debt gave guarantor right to be subrogated to the creditor's claims against the principal); *Corp. Buying Serv. v. Lenox Hill Radiology Assoc.,* No. 92 Civ. 3374(SAS), 1995 WL 608288, at *3–4 (S.D.N.Y. Oct. 17, 1995) (holding guarantor may pay debt in full and become subrogated to rights of the creditor). Thus, despite Chemtex's contentions, under no circumstances could the cash collateral deposits be included as assets of SAE.

Even assuming that Century foreclosed its lien, sold SAE's assets, and generated approximately $1,265,770 (the amount Chemtex asserts to be the "value" of SAE's collateral as of December 31, 2000 (Pl.'s Mem. in Opp'n 7)), Chemtex still would not have received any of the proceeds from that sale. As provided in UCC § 9–611, the only parties to receive notice of a sale of assets under Article 9 are the debtor (SAE), any guarantor of the debtor,

any other party holding a valid security interest in the debtor's collateral, and any party who notified Century that it had a claim or interest in the debtor's collateral. *See* UCC § 9–611(c) (2000).

▮ Chemtex was an unsecured creditor of SAE and, despite being aware of Century's security interest before it opened the Letters of Credit, never contacted or otherwise advised Century of its alleged claim. Chemtex did not publicly file any security agreement, note, or other financing document that would have put Century on notice of its claim. Thus, in the event any surplus money was generated by a sale of SAE's assets (over and above the amount needed to satisfy SAE's obligations to Century), Century would have been obligated only to make an accounting to SAE and pay over to SAE any such surplus. *See id.* § 9–615(d)(1).

### Conclusion

For the reasons set forth above, Century's summary judgment motion is granted, and the Fourth and Fifth Causes of Action as alleged against Century are dismissed with prejudice.

Judgment is to be submitted upon notice.

It is so ordered.