# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2707

_____

Ritchie Special Credit Investments, Ltd.; Rhone Holdings II, Ltd.; Ritchie Capital Management SEZC, Ltd., formerly known as Ritchie Capital Management, Ltd.

*Plaintiffs - Appellants*

v.

JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; J.P. Morgan Europe Ltd.; Richter Consulting, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 15, 2022
Filed: September 13, 2022

_____

Before GRASZ, STRAS, and KOBES, Circuit Judges.

_____

STRAS, Circuit Judge.

Ritchie Special Credit Investments fell victim to a massive Ponzi scheme. Now it wants its money back. It has tried before and failed. This time it is going after a fellow creditor and a consulting firm, but it is going to leave empty handed once again. Most claims do not belong to Ritchie, and the one that could fails to

state a cause of action.  For those reasons, we affirm the district court's[1] dismissal of the complaint.

## I.

Ritchie made some bad investment decisions.  Among the worst was trusting Tom Petters, who turned out to be a serial fraudster.  Ritchie became one of his final victims after it loaned the Petters companies about $189 million.  The security for the loan was stock in the Polaroid Corporation, which at the time was a wholly owned subsidiary of Petters Group Worldwide.

What Petters did not tell Ritchie was that he was operating a long-running multi-billion-dollar fraud.  And to make matters worse, the entire Petters empire was on the verge of financial collapse.  The situation was so precarious, in fact, that other creditors, including JP Morgan, had demanded repayment of their loans.  While others were collecting, Ritchie was loaning more money.

Even with Ritchie's money, the scheme collapsed.  Within months, the FBI arrested Petters and raided his corporate offices and home.  In the aftermath, the numerous companies owned by Petters filed for bankruptcy.

During the bankruptcy's initial phases, the trustees reached a settlement with JP Morgan, one of the defendants here, that required it to repay some of what it collected during the waning days of the fraud.  Accompanying the settlement were "bar orders," which prohibited creditors from asserting related claims in other cases. One of them

> barred and permanently enjoined . . . Petters Creditors, or anyone whose Claim in any way arises from or is related to the [Petters] Liquidating Trust, the [Petters] Debtors, the [Petters] Estates, the

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

> Polaroid Debtors, the Polaroid Estates, the Petters Capital Debtor, the Petters Capital Estate, Thomas J. Petters, and/or Petters'[s] Ponzi scheme . . . from asserting or prosecuting any Claim that belongs or belonged to one or more of the Trustees.

*In re Petters Co.*, No. 08-45257, slip op. at 6 (Bankr. D. Minn. May 3, 2018); *see also United States v. Petters*, No. 08-5348, slip op. at 4–5 (D. Minn. May 21, 2018) (issuing a similar order).

Despite the bar orders, Ritchie remains intent on getting its money back. So far, it has little to show for its efforts. *See Ritchie Cap. Mgmt., L.L.C. v. JP Morgan Chase & Co.*, 960 F.3d 1037, 1044 n.1 (8th Cir. 2020) (collecting cases). In this iteration, the targets are JP Morgan and Richter Consulting. Its principal theory is that these firms aided and abetted Petters's fraud. And even if they did not, the complaint alleges that the transfers to JP Morgan were fraudulent. Once again, however, Ritchie will leave empty handed.

## II.

Ritchie's most pressing problem is that it lacks standing to assert these claims against JP Morgan. Bankruptcy standing is all about ownership: who owns the claims that Ritchie is trying to bring? *See In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007); *see also In re Wilton Armetale, Inc.*, 968 F.3d 273, 280–81 (3d Cir. 2020) (distinguishing bankruptcy standing from Article III standing).

A bankrupt debtor will typically have multiple creditors nipping at its heels for what little remains. The bankruptcy code deals with this problem by appointing a trustee who has the responsibility to "collect and reduce to money the property" of the debtor. 11 U.S.C. § 704(1). The trustee oversees the bankruptcy "estate," which more or less includes "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1). Among them are "causes of action" that the debtor could have brought. *Senior Cottages*, 482 F.3d at 1001. Those causes of action belong to the

-3-

debtor—and by extension, the trustee—who gets to bring them on behalf of the estate. *See id.*

A.

One of those claims is that JP Morgan aided and abetted Petters's fraud. If the claim is "general to the [bankruptcy] estate," then only the trustee may bring it, not an individual creditor. *Wilton Armetale*, 968 F.3d at 282 (quotation marks omitted); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 703–04 (2d Cir. 1989). If it is "personal to a specific creditor," on the other hand, then it is fair game for an individual lawsuit. *Wilton Armetale*, 968 F.3d at 282 (quotation marks omitted). The basic rule of thumb is that, if the debtor could have asserted the claim the moment before it entered bankruptcy, the trustee gets to bring it now. *See Senior Cottages*, 482 F.3d at 1001; *see also* 11 U.S.C. § 704(1) (stating that the trustee has the duty to "collect . . . the property" of the debtor).

The aiding-and-abetting claim fits that description. As the complaint alleges, after companies like JP Morgan and Ritchie loaned money to one of the Petters companies, it did not take long for Petters to steal it. There is little doubt that he defrauded lenders. But he also stole from his own companies, meaning that the companies have the same cause of action against JP Morgan for helping *Petters himself* perpetuate the fraud. *See Senior Cottages*, 482 F.3d at 1004–05. Under bankruptcy law, the cause of action now belongs to the trustees. *See id.*; *see also Wilton Armetale*, 968 F.3d at 282–83.

And they pursued JP Morgan from the beginning. Early on, JP Morgan agreed to pay over $30 million to settle a group of claims filed by the trustees. *See In re Petters Co.*, No. 08-45257, slip op. at 6 (Bankr. D. Minn. May 3, 2018). To protect the settlement, two courts issued bar orders preventing creditors like Ritchie from asserting any claims that "belong[] or belonged to one or more of the [bankruptcy] [t]rustees." *Id.*; *see United States v. Petters*, No. 08-5348, slip op. at 4–5 (D. Minn.

-4-

May 21, 2018) (using similar language). Those orders, along with general bankruptcy-standing doctrine, prevent Ritchie from pursuing JP Morgan separately.

## B.

The same goes for the fraudulent-transfer claims against JP Morgan. *See Finn v. All. Bank*, 860 N.W.2d 638, 643, 644–45 (Minn. 2015) (describing fraudulent-transfer claims). We have long held that *only* a trustee can bring them. *In re Lauer*, 98 F.3d 378, 388 (8th Cir. 1996). "[I]ndividual creditors" like Ritchie, by contrast, lack standing to do so. *Id.*

## III.

Ritchie's aiding-and-abetting claim against Richter Consulting under New York law cannot move forward either, but for a different reason. According to the complaint, Richter misled Ritchie through the due-diligence documents it prepared. Although we assume that this claim is "personal" to Ritchie, *Wilton Armetale*, 968 F.3d at 282–83, it still cannot succeed because the complaint never alleges enough facts to infer that Richter had "actual knowledge" of Petters's fraud, *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (applying New York law); *see also Ginsburg Dev. Cos. v. Carbone*, 22 N.Y.S.3d 485, 489–90 (N.Y. App. Div. 2015) (listing the elements of aiding-and-abetting fraud).

One essential element of an aiding-and-abetting claim like this one is "actual knowledge of fraud." *Lerner*, 459 F.3d at 292–93; *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 978–79 (N.Y. 2009). Even "alleged ignorance of obvious warning signs of fraud will not . . . adequately allege actual knowledge." *Chemtex, LLC v. St. Anthony Enters., Inc.*, 490 F. Supp. 2d 536, 547 (S.D.N.Y. 2007) (quotation marks omitted). As one case recently put it, "[p]atterns of behavior highly

indicative of fraud support, at most, constructive knowledge." *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 413 (S.D.N.Y. 2021).

Viewed in the light most favorable to Ritchie, the allegations in the complaint describe no more than constructive knowledge of the fraud. During its examination of Polaroid's books and records, Richter discovered an inflated accounts-receivable figure, "loans" from Petters's other companies, and payments on a "sham" note. It was also allegedly aware that Polaroid's consumer-electronics business was not viable and that auditors had recently resigned rather than complete their work. We can infer from these allegations that Richter knew that Polaroid was in serious financial trouble and that the company's demise may not have been far away. It may even have misrepresented Polaroid's financial condition in its due-diligence documents.

What the complaint does not "plausibly show[]" is that Richter had "actual knowledge" that *Petters himself* was engaged in fraud. *Ashcroft v. Iqbal*, 556 U.S. 662, 682–83 (2009) (stating that a complaint must contain enough "factual content" to "nudge" the claim "from conceivable to plausible" (brackets and quotation marks omitted)). The complaint describes the fraud in the following way: "Petters sought out Thane Ritchie, criminally defrauded him and his companies, then laundered the proceeds of the Ritchie loans through a circuitous international chain of bank accounts." Nothing suggests, however, that Richter was aware of this sequence of events, much less that it *knew* that Petters was operating a fraudulent scheme.[2] It was, after all, given the limited task of examining Polaroid's finances, a legitimate company, so it is no surprise that Ritchie's complaint could not connect the dots. Yet without them, it has not stated an aiding-and-abetting claim. *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018).

---

[2] Although the complaint alleges that Richter "gained actual knowledge of the fraudulent nature of Petters's enterprises," this allegation is too "conclusory" for us to assume it is true. *Iqbal*, 556 U.S. at 681.

-6-

## IV.

We accordingly affirm the judgment of the district court.

_____